# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### ATHENS DIVISION

| | |
|---|---|
| **E.C., by and through his parent, TONESHIA C., and TONESHIA C.,**<br><br>    *Plaintiffs,*<br><br>**v.**<br><br>**WALTON COUNTY SCHOOL DISTRICT, and TARA GEISER,**<br><br>    *Defendants.* | **CIVIL ACTION NO. 3:25-cv-00158-TES** |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS IN PART

On November 28, 2025, Defendants Walton County School District ("WCSD") and Tara Geiser ("Geiser") filed a Motion to Dismiss [Doc. 14] Plaintiffs E.C., by and through his parent, Toneshia C. and Toneshia C.'s Amended Complaint [Doc. 11] pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## FACTUAL BACKGROUND

E.C. is a 15-year-old, tenth grade student who attended school in the Walton County School District from March 2022 to August 2025. [Doc. 11 at ¶ 5]. E.C. has been diagnosed with attention-deficit/hyperactivity disorder ("ADHD"), language disorder, specific learning disorder in math, and specific learning disorder in writing. [*Id.* at ¶ 14].

According to Plaintiffs, E.C.'s disabilities adversely affect his behavioral, functional, and academic performance in school. [*Id.* at ¶ 15]. Because of his disabilities, E.C. requires accommodations, special education, and related services to further his progress in school. [*Id.* at ¶ 16]. E.C.'s disabilities impede his ability to process and interpret new information and make learning new concepts and skills, especially in math and writing, difficult. [*Id.* at ¶¶ 19–20].  In May 2023, the WCSD determined that E.C. is a student with a disability who is eligible to receive special education and related services through an Individualized Education Program ("IEP"). [*Id.* at ¶ 24].

E.C. received some special education and related services through an IEP while at the WCSD. [*Id.* at p. ¶ 26]. Even so, E.C.'s academic progress in math and writing stagnated during middle school. [*Id.* at ¶ 40]. Every standardized assessment that WCSD administered showed that E.C. lagged significantly behind his peers on every academic subject tested. [*Id.* at ¶ 53]. Plaintiffs allege that for years, T.C. raised concerns that E.C.'s IEP goals and services did not account for E.C.'s individualized deficits and needs and did not allow E.C. to make sufficient progress in light of his circumstances. [*Id.* at ¶ 66].

At the end of eighth grade, however, E.C. was expelled from Loganville Middle School for passing an electronic vaporizer device between two other students. [*Id.* at ¶ 69]. The vape pen, however, was not *just* a vape pen. This particular vape pen contained THC, or marijuana. *See E.C. v. Walton County BOE*, Case No. 2024-60 (Ga. SBE Sept.

2024). Neither party disputes that the incident involving the vape pen was the sole and direct reason E.C. was expelled. E.C.'s expulsion was to run from the last month of his eighth-grade year through the first semester of his ninth-grade year. [Doc. 11 at ¶ 70]. Because he got expelled, E.C. attended the WCSD's alternative program during his expulsion. [*Id.* at ¶ 71].

The alternative program provided only virtual educational services. [*Id.* at ¶ 72]. As a matter of practice, students enrolled in the alternative program do not receive in-person instruction, support, or accommodations, regardless of disability-related needs. [*Id.* at ¶ 73]. After various changes to E.C.'s schedule that resulted in no in-person co-teaching or small group services, T.C. filed a formal complaint with the Georgia Department of Education ("GDOE"). [*Id.* at ¶¶ 73–88]. After a series of meetings with representatives from the WCSD that resulted in several other changes made to E.C.'s schedule, T.C., through legal counsel, sent a letter to Defendant Geiser outlining T.C.'s position that Defendants' actions were discriminatory and retaliatory on August 16, 2024. [*Id.* at ¶ 105].

On October 18, 2024, Plaintiffs filed an administrative due process complaint with the GDOE and the Office of State Administrative Hearings ("OSAH") pursuant to the IDEA. [*Id.* at ¶ 174]. Plaintiffs' due process complaint alleged that the WCSD violated the IDEA because it denied E.C. a free, appropriate education, failed to develop an IEP that would allow him to make progress in the general education curriculum,

failed to educate him in the least restrictive environment at the alternative program, failed to develop an appropriate transition plan, and denied T.C. meaningful participation in E.C.'s educational planning. [*Id.* at ¶ 187]. Plaintiffs also alleged that Defendants intentionally discriminated against E.C. on the basis of his disability and retaliated against E.C. and T.C. in violation of the ADA and Section 504. [*Id.* at ¶ 188].

On January 24, 2025, the WCSD moved for Summary Determination under Ga. Comp. R. & Regs. 616-1-2-.15. [*Id.* at ¶ 192]. On February 25, 2025, the ALJ dismissed Plaintiffs' ADA and Section 504 claims because OSAH does not have jurisdiction to consider these claims. [*Id.* at ¶ 193]. On March 17, 2025, the ALJ granted summary determination for the claims alleged to have occurred during the period of April 25, 2024, through December 16, 2024, when E.C. was enrolled in the alternative program. [*Id.* at ¶ 194]. In the Summary Determination order, the ALJ held that for claims arising from E.C.'s time at the alternative program, (1) there is no genuine issue of material fact that the WCSD provided a free appropriate public education ("FAPE") to E.C.; (2) that there is no genuine issue of material fact that the WCSD's procedural violations did not amount to a denial of a FAPE; and (3) there is no genuine issue of material fact that the GDOE's imposed remedy isn't adequate to address the alleged violations. [*Id.* at ¶ 195].

On April 14–16, 2025, the ALJ held a hearing on Plaintiffs' remaining claims based on allegations prior to the alternative school period. [*Id.* at ¶ 196]. The ALJ ultimately determined that all evidence related to or accrued during the period that E.C.

4

was enrolled in alternative school was irrelevant and preemptively excluded any such evidence. [*Id.* at ¶ 197]. Before Plaintiffs concluded their case in chief, the ALJ held that Plaintiffs were not entitled to private school placement and excluded testimony supporting that requested relief. [*Id.* at ¶ 198]. Following Plaintiffs' case in chief, the ALJ awarded the WCSD a partial directed verdict, holding that the WCSD did not violate Plaintiffs' rights pertaining to E.C.'s IEP transition planning or his math course planning. [*Id.* at ¶ 199]. In the meantime, after a hearing on April 30, 2025, the WCSD held a meeting to re-evaluate E.C.'s special education eligibility and services. [*Id.* at ¶ 175]. After more meetings and more disagreement between the parties, T.C. moved her family out of the WCSD at the end of the 2024-2025 school year. [*Id.* at ¶ 185]. E.C. is attending school in a different school district in Georgia. [*Id.*].

On June 4, 2025, in accordance with the ALJ's instructions, Plaintiffs submitted their Proposed Final Decision. [*Id.* at ¶ 225]. On August 19, 2025, the ALJ issued his Final Decision. [*Id.* at ¶ 226]. The ALJ held that E.C. was not denied a FAPE and that he was not entitled to private placement as relief. [*Id.* at ¶ 228]. The ALJ also held that the WCSD did not violate E.C's right to a math rubric and that the WCSD's placement of E.C. in Foundations of Algebra did not amount to, nor was the result of, a FAPE violation. [*Id.* at ¶¶ 229–230]. While the ALJ held that the WCSD did not fail to develop an appropriate transition plan for E.C., the ALJ nonetheless ordered the WCSD to "promptly convene an IEP meeting to obtain input from E.C. and T.C. concerning issues

and other considerations to be addressed in E.C.'s transition plan. The IEP team shall revise and update the transition plan as required." [*Id.* at ¶ 232]. Plaintiffs allege that they have exhausted their administrative remedies. [*Id.* at ¶ 235].

## **PROCEDURAL BACKGROUND**

Plaintiffs originally filed this action against Defendants on October 6, 2025. [Doc. 1]. On November 14, 2025, Plaintiffs filed their Amended Complaint against all Defendants. [Doc. 11]. In their Amended Complaint, Plaintiffs bring several causes of action against Defendants, including discrimination based on disability in violation of Title II of the ADA, disability discrimination and retaliation in violation of Section 504 of the Rehabilitation Act, and violation of the IDEA, all against WCSD, as well as retaliation in violation of the ADA against both WCSD and Defendant Geiser. *See* [*Id.*]. Each of these claims stem from E.C.'s time as a student in the WCSD.

Plaintiffs allege that "Defendant [WCSD] has denied E.C. an appropriate education in violation of the IDEA and discriminated against him in violation of the ADA and the RA by excluding him from his public education, isolating him in a virtual placement, and failing to accommodate his disability-related needs" and that "Defendants [WCSD] and [Geiser] have retaliated against [Plaintiffs] for challenging them, in violation of the ADA and Section 504 of the RA." [Doc. 11, p. 3].

On October 18, 2024, Plaintiffs filed an administrative due process complaint. [*Id.* at p. 4]. In this case, Plaintiffs "seek an appeal of the administrative decision, issued by

the Office of State Administrative Hearings on August 18, 2025, pursuant to the IDEA,

20 U.S.C. § 1415(i)." [*Id.*]. In the Final Decision, the ALJ found that E.C. "was not denied

a [Free Appropriate Public Education ("FAPE")]," "was not entitled to private

placement as relief," "that the District did not violate E.C.'s right to a math rubric," and

"that the District's placement of E.C. in Foundations of Algebra did not amount to, nor

was the result of, a FAPE violation." [*Id.* at p. 30].

## LEGAL STANDARD

The Court starts by noting that this case is not a traditional case, at least in the

sense of its procedural posturing. First, Plaintiffs' appeal of the ALJ's determination as

to the IDEA is not governed by the customary Rule 12(b)(6) standard. The district

court's review of an IDEA claim is in the nature of an appeal, but it is not limited to the

administrative record. *Weiss v. Sch. Bd. of Hillsborough Cnty.*, 141 F.3d 990, 992 (11th Cir.

1998). In the IDEA context, an administrative decision "is entitled to due weight and the

court must be careful not to substitute its judgment" for that of the hearing officer.

*Walker Cnty. Sch. Dist. v. Bennett ex rel. Bennett*, 203 F.33d 1293, 1297 (11th Cir. 2000)

(citing Je*fferson Cnty. Bd. of Educ. V. Ala Dep't of Educ.*, 853 F.2d 853 (11th Cir. 1988)); *Doe

v. Ala. Dep't of Educ.*, 915 F.2d 651 (11th Cir. 1990). The extent of the deference to be

given to the administrative decision is left to the sound discretion of the district court

which must consider the administrative findings but remains free to accept or reject

them. *Walker Cnty*, 203 F.3d at 1297–98; *Doe*, 915 F.2d at 657 n.3. The Court reviews legal

conclusions by the hearing officer under a *de novo* standard. *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1284 (11th Cir. 2008).

As to Plaintiffs' claims under the ADA and RA, the Rule 12(b)(6) dismissal standard does apply. To that end, when ruling on a 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an

8

entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (internal quotations omitted); *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at

545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

## **DISCUSSION**

The Court finds it prudent to begin its analysis with Plaintiffs' IDEA claim. The Court must contend first with the ALJ's determination that the WCSD did not violate E.C.'s right to a FAPE under the IDEA. Plaintiffs allege that "the ALJ erred by granting summary determination to the District on all issues from April 2024 to December 2024" and that "[i]n granting [WCSD's] motion for summary determination, the ALJ inappropriately weighed evidence, disregarded Plaintiffs' evidence, disregarded applicable OSAH rules for summary determination, and made erroneous legal conclusions" among other complaints. [Doc. 11, p. 43].

The Court, however, disagrees. On review of the record, the Court finds that the ALJ carefully considered the evidence and testimony received at the hearing and made a decision that reflects as much. The ALJ determined that, for many of the issues raised by Plaintiffs, Plaintiffs simply failed to make the requisite showing by a preponderance of the evidence. [Doc. 1-5, pp. 34–38]. In doing so, the ALJ cited to specific facts to support its decision — factual findings that this Court must give due weight. *L.J. by*

10

*N.N.J v. Sch. Bd. of Broward Cnty.*, 927 F.3d 1203, 1210 (11th Cir. 2019).

For example, in the ALJ's earlier Summary Determination Order, the ALJ found that "during the alternative school period, there [was] no genuine issue of material fact that the [WCSD] provided measurable goals and measured E. C.'s performance against those goals. The [ALJ] conclude[d] that during the alternative school period, there [was] no genuine issue of material fact that the [WCSD] provided supplementary aids and services, which the parent terminated. The [WCSD] provided 1:1 services and there is no genuine issue of fact that with one exception, E.C.'s math scores—his total score in particular which improved by more than a half grade level during one semester—improved." [Doc. 11-4, p. 5]. This example, and many others from the record, clearly indicates that the ALJ took all available evidence into account, and after careful consideration, determined that Plaintiffs were unable to show that E.C. was denied a FAPE.

Furthermore, while Plaintiffs have listed several ways they feel the ALJ erred, they have not told the Court *why* the ALJ's decisions were wrong. They just disagree with the ALJ's decision. Essentially, Plaintiffs' Amended Complaint fails to adequately allege that the ALJ made incorrect factual findings or conclusions of law as to the WCSD's provision of a FAPE in the Interim Alternative Educational Setting. And, in fact, Plaintiffs themselves admit that "[t]hrough the filing of their Due Process Complaint, Plaintiffs received some relief on the merits of their claim," including an

11

"[order] to comply with the transition planning provisions of the IDEA, [to] review and identify necessary supports and interventions based on [a private math tutoring company's] assessments, review and evaluate E.C.'s IEP goals and benchmarks and provide him with a [functional behavioral assessment]," which Plaintiffs have allegedly requested the WCSD to do for years. [Doc. 11, p. 45]. The ALJ's instruction for Defendants to take such corrective action was not given as an admonishment for violation of the IDEA, but rather as a starting point for the WCSD to improve after learning of certain potential deficits in its programming. [Doc. 11-4, pp. 35–36]. As noted by the ALJ, after the provision of evidence, the ALJ was "left with the argument that the mere existence of deficits means that the District's and the school's programming and support must have been inadequate." [*Id.* at p. 35].

The evidence, however, doesn't support such a conclusion, especially when other possible contributing factors such as "absences, tardies, and shifting from school to school prior to arriving in the [WCSD]" were factored in. [*Id.*]. At the end of the day, Plaintiffs have presented no compelling reason to disturb the findings of the ALJ, so the Court declines to do so. Simply put, Plaintiffs failed to make the requisite showing by a preponderance of the evidence. For that reason, the Court **DISMISSES** Count V of Plaintiffs' Amended Complaint.

Defendants also argue that Plaintiffs can't bring claims under the ADA or Rehabilitation Act because E.C. is not entitled to protection under those statutes because

of discipline arising out of a drug offense. [Doc. 14, p. 8]. Here, Defendants are specifically referring to Counts I and II of Plaintiffs' Amended Complaint where Plaintiffs allege that the WCSD discriminated against E.C. because of his disability in violation of Title II of the ADA and § 504 of the Rehabilitation Act. Title II of the ADA prohibits any public entity from discriminating against an individual on the basis of their disability. *Fry v. Napolean Cnty. Sch.*, 580 U.S. 154, 159 (2017). Additionally, Section 504 prohibits disability discrimination in federally funded programs or activities. 29 U.S.C. § 794(a); *Fry*, 580 U.S. at 159.

The federal regulation implementing Title II requires public entities to make "reasonable modifications" to their "policies, practices, or procedures" when necessary to avoid discrimination. *Id.* at 160 (quoting 28 C.F.R. § 35.130(b)(7)). Section 504 of the Rehabilitation Act requires funding recipients to make "reasonable" modifications to existing practices to accommodate disabled individuals. *Id.* (citing *Alexander v. Choate*, 469 U.S. 287, 299–300 (1985)).

"To state a claim under Title II or § 504, a plaintiff must establish (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) (quoting *Bircoll v.*

*Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)); *Streeter v. Dep't of Pub. Safety*, 689 F. Supp. 3d 1312, 1329 (S.D. Ga. 2023). An "individual with a disability" is an individual who has a physical or mental impairment which substantially limits one or more major life activities, a record of such impairment, or is regarded as having such an impairment. 42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(A).

Defendants, however, contend that under 42 U.S.C. § 12210(a), E.C. cannot qualify as an individual with a disability because he was expelled "on the basis of illegal drug use." [*Id.* at p. 11]. Section 12210 states that an individual is not an "individual with a disability" if he is "currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12210(a). The Rehabilitation Act echoes that sentiment: "For purposes of subchapter V, the term 'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use." 29 U.S.C. § 705(20)(C)(i). Further, the relevant statutes broadly defines "drug use" to include "the use of drugs, the *possession . . . of which is unlawful* under the Controlled Substances Act." 42 U.S.C. § 12210(d)(1); 29 U.S.C. § 705(10)(B) (emphasis added).

Plaintiffs allege that "E.C. was temporarily expelled from attending WCSD schools in person with the option of attending alternative school due to his possession of a vape pen." [Doc. 11 at ¶ 69].]. Defendants point out that Plaintiffs, however, conveniently omitted that the vape pen contained THC, also known as

14

Tetrahydrocannabinol, or marijuana. *See E.C. v. Walton County BOE*, Case No. 2024-60 (Ga. SBE Sept. 2024).[1] THC and marijuana are illegal substances under the Controlled Substances Act. 21 U.S.C. § 812, Schedule I (c)(10), (c)(17). The crux of Defendants' argument boils down to this: E.C. was expelled because he possessed a vape pen that contained THC, that possession amounts to drug use under the text of the ADA and RA, that illegal drug use ultimately led to him being educated virtually and the illegal drug use prevents E.C. from seeking protection as an individual with a disability under the ADA or RA.

The Court agrees. The plain text of the ADA and RA clearly exclude a person illegally using drugs from the definition of an "individual with a disability." *See* 42 U.S.C. § 12210(a)("'[I]ndividual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use."); 29 U.S.C. § 705(20)(C)(i)  ("[T]he term 'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use."); *Tracy P. v. Sarasota Cnty.*, No. 8:05-CV-927T27EAJ, 2007 WL 951740 (M.D. Fla. Mar. 28, 2007) (holding that in light of

---

[1] The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). In this case, the Court finds it appropriate to take judicial notice of the September 2024 State Board of Education Decision on Appeal. *See* https://apps.gadoe.org/SBOE/SBOEAppeals/SBOE%20Signed%20Decision%20-%20Case%20No.%20202460%20E.C.%20v.%20Walton%20County%20BOE%20(ADA).pdf#search=e%2Ec%2E.

15

contemporaneous drug use, a plaintiff was not protected by Title II of the ADA with respect to a county's zoning determination); *Beckman v. Collier Cnty. Bd. Of Cnty. Commissioners*, No. 2:2-24-CV-585-JES-DNF, 2026 WL 91580 (M.D. Fla. Jan 13, 2026) (holding that an adverse employment action after testing positive for the presence of marijuana during a random drug screening disqualified claimant from protections under the ADA for a gastrointestinal condition); *Phillips v. PPG Indus., Inc.*, No. 5:14-CV-1274-VEH, 2015 WL 7458687 (N.D. Ala. Nov. 24, 2015) (holding that an employee with total hearing loss was not a qualified individual for purposes of the ADA when the employee tested positive for narcotics use). As explained above, "using" illegals drugs like THC occurs when one "possesses" those same controlled substances. 42 U.S.C. § 12210(d)(1); 29 U.S.C. § 705(10)(B).

By Plaintiffs' own admission, the WCSD expelled E.C because he allegedly passed an electronic vaporizer device between two other students in April 2024 at the end of his eighth-grade year. [Doc. 11 at ¶ 69]; *See also E.C. v. Walton County BOE*, Case No. 2024-60 (Ga. SBE Sept. 2024). Plaintiffs further argue that the Georgia State Board of Education ("GA BOE") concluded that E.C. possessed a vaporizer device, however, they left out that the GA BOE decision begins by confirming that "[EC] violate[d] its student code of conduct policy by possessing a THC vape while at school." *E.C. v. Walton County BOE*, Case No. 2024-60 (Ga. SBE Sept. 2024) at 1. The GA BOE decision goes further, confirming that the school resource officer ("SRO") tested the vape device

and determined that there was THC residue in the vape. *Id.* The SRO then charged E.C. with possession of drug paraphernalia and WCSD charged E.C. with violating the Local Board's code of conduct Rule 3.08. *Id.* And while Plaintiffs allege that the GA BOE declined to conclude that E.C. possessed THC, it is also true that the BOE did not reach that question because "*possession* of paraphernalia that can be used to consume an inhalant is sufficient to warrant discipline under the Local Board's policy." *E.C. v. Walton County BOE*, Case No. 2024-60 (Ga. SBE Sept. 2024) at 3 (emphasis added).

In summation, the record clearly provides that WCSD disciplined E.C. for possession of a THC product on school grounds. Possession of a THC product qualifies as "drug use" under the relevant statutes.[2] This possession prohibits E.C. from being a qualified individual under the ADA and the RA. Because E.C. is not a qualified individual, he may not state a claim under either the ADA or RA.[3] Taking the entirety of the record under consideration, Counts I and II of the Amended Complaint must be

---

[2] Given society's relaxing attitudes towards marijuana use, some will surely argue that excluding a person from the ADA's protections based on the mere possession of marijuana is unduly harsh and should be reconsidered, especially when the person involved is a minor. But, those sorts of policy questions are explicitly reserved for Congress under our system of government. The fact remains when Congress wrote the ADA and RA, it decided to exclude users of drugs from its definition of a person of an "individual with a disability." Further, it defined "drug use" to include the possession of illegal drugs. Congress surely has the right to define terms in its statutes as it sees fit. And, courts must interpret statutes as written, including the statutes' definitions. That is exactly what the Court has done here.

[3] Even if E.C. were a qualified individual, the Court finds that Plaintiffs' ADA and RA claims are duplicative of Plaintiffs' IDEA claims and fail for the same reasons that the IDEA claim fails. Plaintiffs' ADA and RA claims are not factually or legally distinct from Plaintiffs' IDEA claims. *See Weiss by Weiss v. Sch. Bd. of Hillsborough Cnty.*, 141 F.3d 990,998 (11th Cir. 1998) (holding that a RA claim fails when based on the same facts as IDEA claims that are dismissed).

**DISMISSED**.

Defendants next contend that Plaintiffs' Amended Complaint fails to state a claim for retaliation against Defendant Geiser. Count III of Plaintiffs' Amended Complaint alleges that she retaliated against E.C. and/or T.C. in violation of the ADA. To state a viable claim for retaliation under the ADA, Plaintiffs must plead facts that plausibly support a finding that "(1) [they] engaged in a statutorily protected expression; (2) [they] suffered an adverse . . .action; and (3) the adverse action was causally related to the protected expression." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 (11th Cir. 2003). "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse . . . action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). But mere temporal proximity, without more, must be "very close." *Id.*

As a starting point, it is unclear to the Court what injury, if any, T.C. has sustained on her own behalf. Much of the activity Plaintiffs complain about almost exclusively involves E.C. And while a parent may bring a claim on either their own or their child's behalf, T.C. has failed to allege any adverse action directed at her. At any rate, it appears that Plaintiffs' claims revolve around Defendants' alleged refusal to accommodate more than a separate, distinct retaliation claim. Allegations that largely amount to Defendants' denial of Plaintiffs' requests for reasonable accommodations are insufficient to constitute adverse action. *See Gilliard v. Georgia Dep't of Corr.*, 500 F. App'x

18

860, 869 (11th Cir. 2012) ("We have refused to address a plaintiff's retaliation claims based on an employer's refusal to accommodate her where the described acts 'relate directly to her 'reasonable accommodation' discrimination claim, not her retaliation claim.'") (citation omitted); *McClain v. Tenax Corp.*, 304 F. Supp. 3d 1195, 1206 (S.D. Ala. 2018) ("[T]he mere denial of a request for a reasonable accommodation cannot be an adverse employment action giving rise to a separate ADA retaliation claim."); *Sacks v. Bd. of Educ. of Baltimore Cnty.*, No. 21-CIV-968, 2021 WL 5233752, at *6 (D. Md. Nov. 9, 2021) ("[T]hough the denial of a request for accommodation may form the basis for a retaliation claim, such a denial does not by itself support a claim of retaliation."); *Buie v. Berrien*, 85 F. Supp. 3d 161, 178 (D.D.C. 2015) (finding the allegations that are "the subject of plaintiff's failure to accommodate claim ... do[ ] not supply grounds for a separate retaliation claim.").[4]

Here, Plaintiffs' allegations mostly revolve around a removal of services or changes to E.C.'s schedule that occurred after Plaintiffs filed a formal complaint with the Georgia DOE. [Doc. 11, ¶¶ 279–283]. These allegations are encompassed in Plaintiffs' preexisting IDEA claim and do not support a separate and distinct claim for retaliation.

---

[4] Claims of retaliation under the ADA are typically examined in the employment context, but the ADA also recognizes retaliation claims outside the employment context. *See Higdon v. Jackson*, 393 F.3d 1211, 1218-19 ("[The anti-retaliation provision of the ADA] allows a complaint of retaliation against a public entity or its employees governed by Title II in the same manner that this provision allows a complaint of retaliation against an employer in Title I.").

Additionally, Plaintiffs attempt to convince the Court that Defendants' alleged threat to bring Rule 11 sanctions and to "refuse to consider E.C.'s IDEA eligibility for specific learning disability in math and writing because such determination would contradict Defendants' defense in the pending OSAH proceeding" amounts to retaliation. [*Id.* at ¶¶ 284–285].  The Court disagrees. These allegations read as more of an outline of Defendants' litigation strategy than retaliation as contemplated under the ADA. Besides, Plaintiffs themselves admit that Defendants never actually pursued Rule 11 sanctions. [*Id.* at ¶ 191]. Plaintiffs cannot expect the Court to police the threat of sanctions that never materialized into any adverse action.

Even assuming that T.C. and E.C. had alleged a retaliation claim separate and distinct from their requests from reasonable accommodations, they have nonetheless failed to allege sufficient facts to support a claim for retaliation against Defendant Geiser. Indeed, there are only two specific averments concerning Defendant Geiser in Count III of the Amended Complaint, including that she "is the Director of Special Education for the District" who "has supervisory and final decision-making authority for the WCSD regarding E.C.'s IEP and special education" and that "[a]t all relevant times, Geiser had actual notice of the facts alleged by Plaintiffs and she was directly involved in the retaliatory decisions made against E.C. as alleged." [Doc. 11, ¶¶ 286–287]. However, Plaintiffs do not specify how Defendant Geiser was specifically involved or delineate any specific actions she took against either Plaintiff to retaliate

against them for their protected activity. In most cases, the factual allegations that Plaintiffs have incorporated under Count III refer to "Defendants" collectively and do not specifically allege any action that Defendant Geiser individually took in retaliation. Plaintiffs also include several conclusory paragraphs regarding the "causal connection between Plaintiffs' protected activity and Defendants' corresponding adverse actions" among other allegations. [*Id.* at ¶ 289]. Plaintiffs have not explained what, exactly, the "causal connection" is or how Defendant Geiser relates to the protected expression and the alleged adverse action. Plaintiffs also don't specify how Defendant Geiser was involved in the alleged retaliatory decisions, nor do they make specific reference to any facts that show temporal proximity or causation.

As pled, it remains unclear what role Defendant Geiser played in any alleged retaliatory conduct. Defendant Geiser's mere "notice" of the facts alleged by Plaintiffs is not enough to constitute a claim of retaliation against her. Stripping away the legal conclusions as pled leaves no facts to substantiate Plaintiffs' claims. As such, Count III of Plaintiffs' Complaint as it relates to Defendant Geiser must be dismissed.[5]

---

[5] Defendants also assert that "the Court should not permit Plaintiffs to pursue a retaliation claim against Geiser in her individual capacity." [Doc. 14, p. 15]. Defendants then launch into a lengthy argument wherein they ask the Court to disregard *Shotz v. City of Plantation, Florida*, 344 F.3d 1161 (11th Cir. 2003), where the Eleventh Circuit held that the ADA permits retaliation claims against individual defendants. *See* [*Id.* at pp. 15–17]. Defendants argue chiefly that *Shotz* may be ignored after the United States Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*—which overturned *Chevron's* agency deference standard for statutory interpretation—because the *Shotz* Court conducted a *Chevron* analysis. *See* [*Id.* at p. 16] (citing *Loper Bright*, 603 U.S.369 (2024) (overruling *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984)). However, as well-explained in the recent case of *Turner v. Atlanta Indep. Sch. Sys.*, No. 1:24-cv-3781-AT, 2025 WL 2711596, at *11 (N.D. Ga. Sept. 11, 2025), the *Shotz* decision's extensive textual and structural analysis supports a conclusion that § 12203 permits individual liability, even without *Chevron*

That leaves Count III as it relates to WCSD and Count IV of Plaintiffs' Amended Complaint. It is not clear from the parties' briefing what, exactly, the parties would have the Court do with the remaining counts. Defendants never specifically mention Count III or Count IV against WCSD at any point in their briefing.[6] And, as the adage goes, "[j]udges are not like pigs, hunting for truffles buried in briefs." *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Defendants seeking dismissal must do so with some particularity. In this case, they did not, and the Court is not at liberty to do it for them.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion to Dismiss [Doc. 14] **in part**. Accordingly, the Court **DISMISSES** Counts I, II, III (as it relates to Defendant Geiser), and V of Plaintiffs' Amended Complaint with prejudice. The Court directs the Clerk of Court to terminate Defendant Tara Geiser as a party.

**SO ORDERED**, this 21st day of July, 2026.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

deference. *Id.* at \*10.  The fact remains that unless and until the Eleventh Circuit directly abrogates or overturns *Shotz*, this Court must follow this binding precedent. District courts simply can't decide that the Circuit courts have overruled or abrogated their precedents. That is strictly reserved for the Circuit court.

[6] The Court notes that the parties' briefing is far from the model of clarity. To the extent Defendants intended for the Court to analyze Plaintiffs' retaliation claims under their issue-preclusion arguments, they failed to expressly ask the Court to do so.