**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | |
|---|---|
| **E.C., by and through his parent, TONESHIA C., and TONESHIA C.,**<br><br>***Plaintiffs,***<br><br>**v.**<br><br>**WALTON COUNTY SCHOOL DISTRICT,**<br><br>***Defendant.*** | **CIVIL ACTION NO.**<br>**3:25-cv-00158-TES** |

**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Here before this Court, Defendant Walton County School District ("WCSD") seeks judgment on the remaining counts of the amended complaint filed by Plaintiffs Toneshia C. ("T.C.") and E.C., by and through his parent, Toneshia C. ("E.C."). [Doc. 11]. Defendant has filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). [Doc. 27].

This Court **GRANTS** Defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Accordingly, Plaintiffs' complaint is dismissed.

**PROCEDURAL BACKGROUND**

Plaintiffs originally filed this action against two defendants: Walton County School District and Tara Geiser. Those Defendants moved to dismiss the action for

failure to state a claim. [Doc. 14]. But, at that time, Defendants did not clearly move for dismissal of all counts, instead specifying only some. *See generally* [*Id.*]. So, the Court declined to grant relief that no party requested. [Doc. 19]. Accordingly, on July 21, 2026, this Court dismissed some, but not all, of the counts in Plaintiffs' Amended Complaint—specifically Counts I, II, V, and, in part, III. [*Id.*].

The dismissed counts alleged in part that WCSD discriminated against E.C. based on disability. [Doc. 19]; [Doc. 11, pp. 45–46]. Specifically, Counts I, II, and V alleged that WCSD violated the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* (the "ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504 of the RA"), and the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA"). [Doc. 11 at ¶¶ 236–274, 308–333]. The dismissed portion of Count III alleged that Defendant Geiser illegally retaliated against Plaintiff in violation of the ADA. [*Id.* at ¶¶ 275–292]. In dismissing these counts, the Court also instructed the Clerk of Court to terminate Geiser as a party. [Doc. 19].

Now, the only counts remaining are Count III—as it relates to Defendant WCSD—and Count IV. [Doc. 11 at ¶¶ 275–307]. Both remaining counts allege that WCSD illegally retaliated against one or both Plaintiffs. [*Id.*]. Count III alleges a continuous and intentional violation of E.C.'s rights under the anti-retaliation provisions of the ADA. [*Id.* at ¶¶ 288–291]. Likewise, Count IV alleges a continuous and ongoing violation of Plaintiffs' rights under the anti-retaliation provisions of Section 504

of the RA. [*Id.* at ¶¶ 303–306].

To address these remaining Counts—after some time[1]—Defendant WCSD submitted both an Answer to Plaintiffs' Amended Complaint [Doc. 26] and a Motion for Judgment on the Pleadings. [Doc. 27]. In their Motion, Defendant now seeks relief in the form of judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). [*Id.*, pp. 1–4].[2] Plaintiffs filed their response to the motion on September 2, 2026, [Doc. 30], and Defendant countered with a reply on September 17, 2026.[3] [Doc. 32].

## **BACKGROUND**

E.C. is a tenth-grade student who attended school in the Walton County School District from March 2022 to August 2025 [Doc. 11 at ¶ 5]. E.C. has been diagnosed with attention-deficit/hyperactivity disorder ("ADHD"), language disorder, specific learning disorder in math, and specific learning disorder in writing. [*Id.* at ¶ 14].

According to Plaintiffs, E.C.'s disabilities adversely affect his behavioral, functional, and academic performance in school. [*Id.* at ¶ 15]. Because of his disabilities, E.C. requires accommodations, special education, and related services to further his

---

[1] On August 4, 2026, Defendant WCSD filed an amended motion requesting an extension of time to respond to Plaintiffs' Amended Complaint and to file a 12(c) motion for judgment on the pleadings, to which Plaintiffs agreed. [Doc. 22]. The Court granted the motion. [Doc. 23]. Two days later, Plaintiffs filed a motion requesting entry of judgment under Rule 54(b) [Doc. 24], which this Court promptly denied. [Doc. 25]. The WCSD filed its Answer to Plaintiffs' Amended Complaint [Doc. 26] and Motion for Judgment on the Pleadings [Doc. 27] concurrently on August 18, 2026.

[2] Proceedings have been stayed at the unopposed request of Defendant WCSD. [Doc 29].

[3] Concurrently, Defendant moved for leave to file an out of time reply [Doc. 31], which was granted. [Doc. 33].

progress in school. [*Id.* at ¶ 16]. E.C.'s disabilities impede his ability to process and interpret new information and make learning new concepts and skills, especially in math and writing, difficult. [*Id.* at ¶¶ 19–20]. In May 2023, the WCSD determined that E.C. is a student with a disability who is eligible to receive special education and related services through an Individualized Education Program ("IEP"). [*Id.* at ¶ 24].

E.C. received some special education and related services through an IEP while at the WCSD. [*Id.* at p. ¶ 26]. Even so, E.C.'s academic progress in math and writing stagnated during middle school. [*Id.* at ¶ 40]. Every standardized assessment that WCSD administered showed that E.C. lagged significantly behind his peers on every academic subject tested. [*Id.* at ¶ 53]. Plaintiffs allege that for years, T.C. raised concerns that E.C.'s IEP goals and services did not account for E.C.'s individualized deficits and needs and did not allow E.C. to make sufficient progress in light of his circumstances. [*Id.* at ¶ 66].

At the end of eighth grade, however, E.C. was expelled from Loganville Middle School for passing an electronic vaporizer device between two other students. [*Id.* at ¶ 69]. The vape pen, however, was not *just* a vape pen. This particular vape pen contained THC, or marijuana. *See E.C. v. Walton County BOE*, Case No. 2024-60 (Ga. SBE Sept. 2024). Neither party disputes that the incident involving the vape pen was the sole and direct reason E.C. was expelled. E.C.'s expulsion was to run from the last month of his eighth-grade year through the first semester of his ninth-grade year. [Doc. 11 at ¶

70]. Because he got expelled, E.C. attended the WCSD's alternative program during his expulsion. [*Id.* at ¶ 71].

The alternative program provided only virtual educational services. [*Id.* at ¶ 72]. As a matter of practice, students enrolled in the alternative program do not receive in-person instruction, support, or accommodations, regardless of disability-related needs. [*Id.* at ¶ 73]. After various changes to E.C.'s schedule that resulted in no in-person co-teaching or small group services, T.C. filed a formal complaint with the Georgia Department of Education ("GDOE"). [*Id.* at ¶¶ 73–88]. After a series of meetings with representatives from the WCSD that resulted in several other changes made to E.C.'s schedule, T.C., through legal counsel, sent a letter to Defendant Geiser outlining T.C.'s position that Defendants' actions were discriminatory and retaliatory on August 16, 2024. [*Id.* at ¶ 105].

On October 18, 2024, Plaintiffs filed an administrative due process complaint with the GDOE and the Office of State Administrative Hearings ("OSAH") pursuant to the IDEA. [*Id.* at ¶ 174]. Plaintiffs' due process complaint alleged that the WCSD violated the IDEA because it denied E.C. a free, appropriate education, failed to develop an IEP that would allow him to make progress in the general education curriculum, failed to educate him in the least restrictive environment at the alternative program, failed to develop an appropriate transition plan, and denied T.C. meaningful participation in E.C.'s educational planning. [*Id.* at ¶ 187]. Plaintiffs also alleged that

Defendants intentionally discriminated against E.C. on the basis of his disability and retaliated against E.C. and T.C. in violation of the ADA and Section 504. [*Id.* at ¶ 188].

On January 24, 2025, the WCSD moved for Summary Determination under Ga. Comp. R. & Regs. 616-1-2-.15. [*Id.* at ¶ 192]. On February 25, 2025, the ALJ dismissed Plaintiffs' ADA and Section 504 claims because OSAH does not have jurisdiction to consider these claims. [*Id.* at ¶ 193]. On March 17, 2025, the ALJ granted summary determination for the claims alleged to have occurred during the period of April 25, 2024, through December 16, 2024, when E.C. was enrolled in the alternative program. [*Id.* at ¶ 194]. In the Summary Determination order, the ALJ held that for claims arising from E.C.'s time at the alternative program, (1) there is no genuine issue of material fact that the WCSD provided a free appropriate public education ("FAPE") to E.C.; (2) that there is no genuine issue of material fact that the WCSD's procedural violations did not amount to a denial of a FAPE; and (3) there is no genuine issue of material fact that the GDOE's imposed remedy isn't adequate to address the alleged violations. [*Id.* at ¶ 195].

On April 14–16, 2025, the ALJ held a hearing on Plaintiffs' remaining claims based on allegations prior to the alternative school period. [*Id.* at ¶ 196]. The ALJ ultimately determined that all evidence related to or accrued during the period that E.C. was enrolled in alternative school was irrelevant and preemptively excluded any such evidence. [*Id.* at ¶ 197]. Before Plaintiffs concluded their case in chief, the ALJ held that Plaintiffs were not entitled to private school placement and excluded testimony

supporting that requested relief. [*Id.* at ¶ 198]. Following Plaintiffs' case in chief, the ALJ awarded the WCSD a partial directed verdict, holding that the WCSD did not violate Plaintiffs' rights pertaining to E.C.'s IEP transition planning or his math course planning. [*Id.* at ¶ 199]. In the meantime, after a hearing on April 30, 2025, the WCSD held a meeting to re-evaluate E.C.'s special education eligibility and services. [*Id.* at ¶ 175]. After more meetings and more disagreement between the parties, T.C. moved her family out of the WCSD's purview at the end of the 2024-2025 school year. [*Id.* at ¶ 185]. E.C. now attends school in a different school district in Georgia. [*Id.*].

On June 4, 2025, in accordance with the ALJ's instructions, Plaintiffs submitted their Proposed Final Decision. [*Id.* at ¶ 225]. On August 19, 2025, the ALJ issued his Final Decision. [*Id.* at ¶ 226]. The ALJ held that E.C. was not denied a FAPE and that he was not entitled to private placement as relief. [*Id.* at ¶ 228]. The ALJ also held that the WCSD did not violate E.C's right to a math rubric and that the WCSD's placement of E.C. in Foundations of Algebra did not amount to, nor was the result of, a FAPE violation. [*Id.* at ¶¶ 229–230]. While the ALJ held that the WCSD did not fail to develop an appropriate transition plan for E.C., the ALJ nonetheless ordered the WCSD to "promptly convene an IEP meeting to obtain input from E.C. and T.C. concerning issues and other considerations to be addressed in E.C.'s transition plan. The IEP team shall revise and update the transition plan as required." [*Id.* at ¶ 232]. Plaintiffs allege that they have exhausted their administrative remedies. [*Id.* at ¶ 235].

Concerning their surviving retaliation claims, Plaintiffs allege that the WCSD "intentionally, and with deliberate indifference, violated Plaintiff's rights under the anti-retaliation provisions" of the ADA and Section 504 of the RA. [*Id.* at ¶¶ 288, 303]. The factual allegations for each alleged statutory violation are the same. *See generally* [*Id.* at ¶¶ 279–285, 296–302]. Plaintiffs allege that the WCSD "engaged in a pattern of retaliation and coercion against Plaintiffs for engaging in statutorily protected activity." [*Id.* at ¶¶ 279, 296]. Specifically, Plaintiffs allege the WCSD illegally retaliated against them in six ways: by changing E.C.'s schedule, by removing E.C. from certain special education services, by placing E.C. in Foundations of Algebra, by reducing E.C.'s after school "study skills" sessions, by "attempt[ing] to coerce Plaintiffs to voluntarily dismiss their retaliation claims by threatening to bring groundless Rule 11 sanctions," and by "refus[ing] to consider E.C.'s IDEA eligibility for specific learning disability in math and writing . . . ." [*Id.* at ¶¶ 280–285, 297–302].

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).[4] Rule 12(c) "provides 'a means of disposing of cases when . . . a judgment on the merits can be achieved by focusing on the content of the

[4] "Pleadings" include complaints, answers, counterclaims, crossclaims, answers to third-party complaints, and—if ordered by the Court—replies to answers. Fed. R. Civ. P. 7(a).

competing pleadings . . . .'" *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014) (internal citations omitted).

Here, there are competing pleadings. Plaintiffs filed an amended complaint [Doc. 11] and Defendant WCSD filed its answer, including affirmative defenses. [Doc. 26]. This case is therefore ripe for Rule 12(c) judgment on the pleadings.

"A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss." *Provident Mut. Life Ins. Co. of Phila. v. City of Atlanta*, 864 F. Supp. 1274, 1278 (N.D. Ga. 1994); *see also Doe v. Bd. of Cnty. Comm'rs, Palm Beach Cnty., Fla.*, 815 F. Supp. 1448, 1449 (S.D. Fla. 1992). And, when ruling on a 12(b)(6) motion—subject to the same standard as a 12(c) motion—the Court must accept the well-pled facts set forth in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006). Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1291 (11th Cir. 2002).

Normally, if a district court considers documents outside the pleadings, the motion for judgment on the pleadings converts into a Rule 56 motion for summary judgment. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). However, under the "incorporation by reference" doctrine, the Court may consider a document attached to

an answer without converting the motion to one for summary judgment, if and only if the attached document is both (1) central to one of the claims, and (2) undisputed. *Id.*; *Julmist v. Prime Ins. Co.*, 92 F.4th 1008, 1016 (11th Cir. 2024); *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).[5] In this context, "undisputed" means merely that the authenticity of the document is not challenged. *Horsley*, 304 F.3d at 1134; *Johnson*, 107 F.4th at 1300. Further, if a case arises from an administrative appeal, the Court may properly consider the administrative record "when the parties are 'well aware of the fact that consideration of the administrative record must be the basis for the trial court's decision[.]'" *M.W. ex rel. Wang v. Clarke Cnty. Sch. Dist.*, No. 3:06-CV-49(CDL), 2008 WL 4449591, at *1 (M.D. Ga. Sept. 29, 2008) (quoting *Washington v. Off. of the Comptroller of the Currency*, 856 F.2d 1507, 1511 (11th Cir. 1988)); *see also DeKalb Cnty. Sch. Dist. V. J.W.M.*, 445 F. Supp. 2d 1371, 1378 n.8 (N.D. Ga. 2006).

## DISCUSSION

In their Motion for Judgment on the Pleadings, Defendant WCSD contends that Plaintiffs' Amended Complaint fails to state a claim against the WCSD under either remaining count. [Doc. 27, pp. 1–2]. Both remaining counts—as they currently stand—allege that the WCSD illegally retaliated against Plaintiffs; Count III alleges retaliation in violation of the Americans with Disabilities Act (the "ADA"), while Count IV alleges

[5] Under Eleventh Circuit precedent, the document at issue need not be referenced in the complaint. *Johnson*, 107 F.4th at 1300 n.6.

retaliation in violation of Section 504 of the Rehabilitation Act (the "RA"). [Doc. 11 at ¶¶ 275–307].[6]

Plaintiffs have failed to state a viable retaliation claim against the WCSD under either statute. Courts evaluate claims under both statutes using the same framework, because the RA incorporates the ADA's anti-retaliation provision. *Patel v. Sec'y of Dep't of Veterans Affs.*, No. 25-11344, 2026 WL 1948994, at *7 (11th. Cir. July 6, 2026); *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1219 (11th Cir. 2021); *compare* 42 U.S.C. § 12203(a) *with* 34 C.F.R. §§ 104.61, 100.7(e) *and* 29 U.S.C. § 794a(a)(2). To state a viable claim for retaliation under either statute, Plaintiffs must plead facts that plausibly support a finding that "(1) [they] engaged in a statutorily protected expression; (2) [they] suffered an adverse . . . action; and (3) the adverse action was causally related to the protected expression." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 (11th Cir. 2003); *see also Mullin v. Sec'y, U.S. Dep't of Veterans Affs.*, 162 F.4th 1296, 1315 (11th Cir. 2025) (citing *Todd*, 998 F.3d at 1219) (applying this evaluative standard in the Section 504 retaliation context). "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse . . . action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). But mere temporal proximity, without

[6] Only Count III alleges harm done to both Plaintiffs. Count III alleges that Defendant's actions have caused and are causing continuous "educational and actual harm" to "Plaintiffs," *i.e.*, T.C. and/or E.C. [*Id.* at ¶ 291]. Count IV, however, alleges only that Defendant's actions have caused and are causing continuous "educational and actual harm" to E.C., without any mention of T.C. [*Id.* at ¶ 306].

more, must be "very close." *Id.*; *see also Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1137 n.15 (11th Cir. 2020) (en banc) (collecting cases) ("While close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient.").

Plaintiffs fail to state a viable retaliation claim for two primary reasons. First, as to T.C., Plaintiffs fail to allege any harm done to T.C. by any alleged adverse action. Second, as to both plaintiffs, Plaintiffs fail to state a claim for adverse action separate and distinct from their preexisting dismissed IDEA claim.

As to T.C., Plaintiffs fail to plausibly allege harm. Plaintiffs either do not allege or fail to demonstrate any harm caused by Defendant WCSD to Plaintiff T.C. In Count IV, Plaintiffs do not allege that T.C. suffered any harm. [*Id.* at ¶ 306]. And, in Count III, Plaintiffs fail to provide any factual content for the Court to reasonably infer that T.C—E.C.'s mother—suffered harm. [*Id.* at ¶ 291]. Instead, Plaintiffs offer a threadbare assertion of harm lacking factual support: "Defendants' retaliatory actions have caused educational and actual harm to Plaintiffs." [*Id.*]. Indeed, since every operative paragraph in Count III has an identical counterpart in Count IV—where Plaintiffs only allege harm against E.C.—and since every operative paragraph concerns alleged educational harms inflicted on E.C., Plaintiffs' Amended Complaint appears to allege no harm done to Plaintiff T.C. at all as it currently stands. *See generally* [*Id.*]. Thus, the

Court grants Defendant judgment on the pleadings as to T.C. on both remaining counts.

Second, we reach the central question: whether the WCSD took any adverse retaliatory action against Plaintiffs. Plaintiffs' ADA and Section 504 retaliation claims against Defendant WCSD revolve around its alleged failure to accommodate, not around a separate, distinct claim of adverse *retaliation*. And, this Court has already upheld the ALJ's determination that the WCSD's decisions that make up these alleged failures to accommodate were reasonably calculated to provide E.C. with a FAPE. Making decisions reasonably calculated to provide E.C. with a FAPE does not amount to "intentionally, and with deliberate indifference," violating E.C.'s rights under either statute's anti-retaliation provision. [Doc. 11 at ¶¶ 288, 303].

The Eleventh Circuit is clear and consistent. Allegations that largely amount to denial of Plaintiffs' requests for reasonable accommodations are insufficient to—themselves—constitute adverse action. *See Gilliard v. Ga. Dep't of Corr.*, 500 F. App'x 860, 869 (11th Cir. 2012) ("We have refused to address a plaintiff's retaliation claims based on an employer's refusal to accommodate her where the described acts 'relate directly to her "reasonable accommodation" discrimination claim, not her retaliation claim.'") (citation omitted); *see also McClain v. Tenax Corp.*, 304 F. Supp. 3d 1195, 1206 (S.D. Ala. 2018) ("[T]he mere denial of a request for a reasonable accommodation cannot be an adverse employment action giving rise to a separate ADA retaliation claim."); *Sacks v. Bd. of Educ. of Baltimore Cnty.*, No. 21-CIV-968, 2021 WL 5233752, at *6 (D. Md. Nov. 9,

2021) ("[T]hough the denial of a request for accommodation may form the basis for a retaliation claim, such a denial does not by itself support a claim of retaliation."); *Buie v. Berrien*, 85 F. Supp. 3d 161, 178 (D.D.C. 2015) (finding the allegations that are "the subject of plaintiff's failure to accommodate claim . . . do[] not supply grounds for a separate retaliation claim.").[7]

Here, the facts underlying Plaintiffs' retaliation claims against the WCSD are the same as the facts underlying their dismissed retaliation claims against Defendant Geiser. In fact, many of Plaintiffs' factual and legal claims against the WCSD are *identical* to their dismissed claims against Geiser. *Compare* [Doc. 11, ¶¶ 275, 279–285, 288] *with* [*Id.* at ¶¶ 293, 296–303]. Plaintiffs' allegations revolve around a removal of services or changes to E.C.'s schedule that occurred after Plaintiffs filed a formal complaint with the GDOE. [Doc. 11, ¶¶ 279-283, 296–300]. What was true then remains true now: Plaintiffs' allegations are encompassed in their preexisting, dismissed, IDEA claim and do not support a separate and distinct claim for retaliation.

"Issue preclusion or collateral estoppel is appropriate when: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Pace v. Bogalusa City Sch. Bd.*,

[7] ADA retaliation claims are typically examined in the employment context, but the ADA also recognizes retaliation claims outside the employment context. *See Higdon v. Jackson*, 393 F.3d 1211, 1218–19 (11th Cir. 2004) ("[The ADA's anti-retaliation provision] allows a complaint of retaliation against a public entity or its employees governed by Title II in the same manner that this provision allows a complaint of retaliation against an employer in Title I.").

403 F.3d 272, 290 (5th Cir. 2005). The IDEA does not necessarily foreclose ADA and Section 504 retaliation claims. However, the claims brought under IDEA must be factually and legally distinct from the retaliation claims, not merely recast educational IDEA claims. *See Durbrow v. Cobb Cnty. Sch. Dist.*, 887 F.3d 1182 (11th Cir. 2018) (stating that, where "the gravamen of the [plaintiff's] § 504 and ADA claims was that the School District deprived [the student] of a FAPE[,]" the plaintiff did not allege misconduct independent of IDEA obligations); *see also, e.g.*, *Weiss v. Sch. Bd. Of Hillsborough Cnty.*, 141 F.3d 990, 998 (11th Cir. 1998); *A.A. by & Through E.L. v. Houston Cnty. Sch. Dist.*, No. 5:05-cv-107-WDO, 2006 WL 8446019, at 13 (M.D. Ga. Jan. 4, 2006) ("Because the Rehabilitation Act claim is based on the same facts and arguments as the IDEA claims, the Rehabilitation Act claim has no merit and is dismissed.").

Here, the Court has already reviewed the record and upheld the ALJ's determination that the WCSD's decisions were reasonably calculated to provide E.C. a FAPE, which was provided during the period that Plaintiffs claim retaliation occurred. The disputes about the adequacy of the accommodations provided have already been adjudicated and addressed, and the retaliation claims here are merely a recasting of those same, previously adjudicated, disputes.

Additionally, the Court continues to disagree with Plaintiffs' assertion that Defendant's alleged threat to bring Rule 11 sanctions and "refuse to consider E.C.'s IDEA eligibility for specific learning disability in math and writing because such

determination would contradict Defendants' defense in the pending OSAH proceeding" amounts to retaliation. [*Id.* at ¶¶ 284–285, 301–302]. These allegations read as more of an outline of Defendants' litigation strategy than ADA retaliation, and they have not materialized into any actual adverse action against Plaintiffs.

Thus, this Court grants Defendant judgment on the pleadings as to both remaining counts, because these supposed retaliation claims are redundant. They are neither factually nor legally distinct from their previously dismissed IDEA claim and do not support a separate claim for retaliation. Even taking the facts as alleged in Plaintiff's complaint as true and making all inferences in favor of the nonmoving party, these accommodation disputes have already been resolved.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's motion for judgment on the pleadings. Accordingly, the Court **DISMISSES** the remainder of Plaintiffs' Amended Complaint with prejudice.

**SO ORDERED**, this 26th day of October, 2026.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**